Nos**.** 2015-1059, 2015-1060

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**GENSPERA, INC.,** *Plaintiff/Counterclaim Defendant-Appellee,* and
**JOHN T. ISAACS., PH.D., AND SAMUEL R. DENMEADE, M.D**.,
*Counterclaim Defendants-Appellees*,
v.
**ANNASTASIAH MUDIWA MHAKA**, *Defendant/Counterclaimant-Appellant.*

Appeal from the United States District Court for the District of Maryland
in Case No. 1:12-cv-00772-MJG, Senior Judge Marvin J. Garbis

---------------------------------------------------------------------

**ANNASTASIAH MUDIWA MHAKA**, *Plaintiff-Appellant*,
v.
**GENSPERA, INC., JOHN T. ISAACS, PH.D.,** and
**SAMUEL R. DENMEADE, M.D.,** *Defendants-Appellees*

Appeal from the United States District Court for the District of Maryland
in Case No. 1:12-cv-03302-MJG, Senior Judge Marvin J. Garbis

## BRIEF OF APPELLEES GENSPERA, INC., JOHN T. ISAACS, PH.D.
## AND SAMUEL R. DENMEADE, M.D.

John E. Nilsson
Seth I. Heller
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

February 12, 2015

*Counsel for Defendants-Appellees
GenSpera, Inc., John T. Isaacs, Ph.D.,
and Samuel R. Denmeade, M.D.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## GENSPERA, INC., JOHN T. ISAACS, PH.D. AND SAMUEL R. DENMEADE, M.D. v. MHAKA

### 2015-1060

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees GenSpera, Inc., John T. Isaacs, Ph.D. and Samuel R. Denmeade, M.D. certifies the following:

1.      The full name of every party or amicus represented by me is:
>       GenSpera, Inc.
>       John T. Isaacs, Ph.D.
>       Samuel R. Denmeade, M.D.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
>       Same

3.      There are no parent corporations and publicly held companies that own 10 percent or more of the stock of any party or amicus curiae represented by me.

4.      The name of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this court are:

>       John E. Nilsson
>       Matthew Wolf
>       Seth Heller
>       James Kaiser
>       Robert Stolworthy
>       ARNOLD & PORTER LLP
>       555 Twelfth Street, N.W.
>       Washington, D.C.  20004

>       Wallace Wu
>       Arnold & Porter LLP
>       777 South Figueroa Street, 44th Floor
>       Los Angeles, CA 90017

Dated:  February 12, 2015                  /s/ John E. Nilsson
                                           John E. Nilsson
                                           Seth I. Heller
                                           ARNOLD & PORTER LLP
                                           555 Twelfth Street, N.W.
                                           Washington, DC  20004
                                           Telephone:  (202) 942-5000
                                           Facsimile:  (202) 942-5999

                                           *Counsel for Defendants-Appellees
                                           GenSpera, Inc., John T. Isaacs, Ph.D.
                                           and Samuel R. Denmeade, M.D.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE................................................................................3

INTRODUCTION ................................................................................................7

STATEMENT OF FACTS ....................................................................................9

I.      GenSpera's PSMA-Targeted Prodrug Technology And Patents ...................9

II.     Mhaka's Work As A Student In The Inventors' Lab .....................................12

III.    Mhaka's Investigation Into The Patents And Her Alleged Claims...............14

IV.     Mhaka's Threats To Bring A Section 256 Inventorship Action ...................16

V.      The Litigation .................................................................................................16

        A.      GenSpera's Declaratory Judgment Action And Mhaka's
                Inventorship Counterclaim................................................................16

        B.      GenSpera's Motion For Summary Judgment And Mhaka's State
                Court Complaint.................................................................................18

        C.      The Summary Judgment Hearing And Subsequent Ruling ...............20

        D.      The Defendants' Motions For Summary Judgment On The Tort
                Claims.................................................................................................22

SUMMARY OF ARGUMENT .............................................................................24

ARGUMENT .......................................................................................................26

I.      The District Court Rightly Exercised Declaratory Judgment Jurisdiction
        And Subject Matter Jurisdiction Over The Claims .......................................26

        A.      The District Court Possessed Declaratory Judgment Jurisdiction
                Based On The Controversy Demonstrated In The Pleadings .............26

B.  The District Court Possessed Subject Matter Jurisdiction Over Mhaka's Inventorship Claim And Her Tort Claims ............................ 30

    1.  Mhaka's Failure To Assert A Meritorious Inventorship Claim Did Not Deprive The District Court Of Federal Question Jurisdiction ................................................................. 30

    2.  The District Court Rightly Exercised Supplemental Jurisdiction Over Mhaka's Tort Claims – *At Mhaka's Invitation* ................................................................................. 33

II.  The District Court Rightly Granted Summary Judgment With Respect To Mhaka's Tort Claims ................................................................... 44

  A.  Mhaka Admitted That She Had No Claim For "Conversion" Or Any Claims At All Against GenSpera ................................................. 45

  B.  The District Court's Determination That Mhaka's Constructive Fraud Claim Against Drs. Isaacs And Denmeade Is Time-Barred Should Be Affirmed ............................................................................ 47

    1.  Mhaka's Arguments Asserting A Later Date Of Accrual Are Inconsistent With Her Admissions In Court And Are, In Any Case, Without Merit ..................................................................... 48

    2.  The District Court Correctly Rejected Mhaka's "Discovery Rule" Argument ........................................................................ 51

    3.  The District Court Also Correctly Rejected Mhaka's "Equitable Tolling" Argument ............................................................. 54

CONCLUSION ....................................................................................... 56

# TABLE OF AUTHORITIES

## CASES

*Alden v. Allied Adult & Child Clinic, L.L.C.*,
  171 F. Supp.2d 647 (E.D. La. 2001) ................................................................. 30

*Already, LLC v. Nike, Inc.*,
  133 S. Ct. 721 (2013) ................................................................................ 28, 29

*Am. Gen. Assurance Co. v. Pappano*,
  822 A.2d 1212 (Md. 2003) ............................................................................. 52

*Arris Group, Inc. v. British Telecom. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011) .................................................................. 28, 29

*Bell v. Hood*,
  327 U.S. 678 (1946) ...................................................................................... 31

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007) .................................................................. 28, 29

*Boggs v. West*,
  188 F.3d 1335 (Fed. Cir. 1999) .................................................................. 35, 50

*Britesmile, Inc. v. Discus Dental, Inc.*,
  No. C 02-03220 JSW, 2005 WL 1083194 (N.D. Cal. May 9, 2005) ........... 18, 32

*Brown v. Neuberger*,
  731 F. Supp. 2d 443 (D. Md. 2010) ................................................................ 55

*Cunningham v. Lanape Regional High Dist. Bd. of Ed.*,
  492 F. Supp. 2d 439 (D.N.J. 2007) ................................................................ 32

*DeGroft v. Lancaster Silo Co., Inc.*,
  527 A.2d 1316 (Md. Ct. Spec. App. 1987) ...................................................... 52

*Doe v. Archdiocese of Washington*,
  689 A.2d 634 (Md. Ct. Spec. App. 1997) ........................................................ 53

*Douglass v. NTI-TSS*,
  632 F. Supp. 2d 486 (D. Md. 2009) ................................................................ 55

*Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*,
  866 F.2d 752 (5th Cir. 1989) ...............................................................32

*Engage Learning, Inc. v. Salazar*,
  660 F.3d 1346 (Fed. Cir. 2011) ........................................... 30, 31, 33

*Forrester Environ. Servs. v. Wheelabrator Tech., Inc*.,
  715 F.3d 1329 (Fed. Cir. 2013) ..........................................................43

*Frederick Road Ltd. Partnership v. Brown & Sturm*,
  756 A.2d 963 (Md. 2000) ...................................................................55

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
  527 F.3d 1318 (Fed. Cir. 2008) ...................................................35, 50

*Gunn v. Minton*,
  133 S. Ct. 1059 (2013)...................................................25, 39, 42, 44

*Hickey v. St. Martin's Press, Inc.*,
  978 F. Supp. 230 (D. Md. 1997)........................................................54

*Jackson v. Sedgwick Claims Management Servs.*,
  731 F.3d 556 (Fed. Cir. 2013) ...........................................................31

*Jang v. Boston Scientific*,
  767 F.3d 1334 (Fed. Cir. 2014) ...................................................36, 42

*Kehr Packages, Inc. v. Fidelcor, Inc*.,
  926 F.2d 1406 (3d Cir.1991) ......................................................32, 33

*Krauser v. Biohorizons, Inc.*,
  753 F.3d 1263 (Fed. Cir. 2014) ...................................................37, 43

*LTVN Holdings, LLC v. Odeh*,
  Civil No. 09-789, 2010 WL 2612690 (D. Md. 2010)........................46

*MedImmune, Inc. v. Genentech, Inc*.,
  549 U.S. 118 (2007)...........................................................................26

*Merchs. Mortg. Co. v. Lubow*,
  339 A.2d 664 (Md. 1975) ...................................................................52

vi

*Moore v. Lafayette Life Ins. Co.*,
    458 F.3d 416 (6th Cir. 2006) ..............................................................32

*Murphy v. Merzbacher*,
    697 A.2d 861 (Md. 1997) ..............................................................48, 51

*Neurorepair v. Nath Law Group*,
    No. 2013-1073, 2015 WL 178302 (Fed. Cir. Jan. 15, 2015)........................43, 44

*Oregon Health & Sci. Univ. v. Vertex Pharms., Inc.*,
    233 F. Supp. 2d 1282 (D. Or. 2002) ....................................................19

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*,
    718 F.3d 1350 (Fed. Cir. 2013) .........................................................29

*Puryear v. Capital One Bank, N.A.*,
    No. CIV.A. RDB-12-3222, 2014 WL 103506 (D. Md. Jan. 10, 2014)..............36

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) .............................................................31

*Rotorex Co. v. Kingsbury Corp.*,
    42 F. Supp. 2d 563 (D. Md. 1999).......................................................36

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) .........................................................51

*Sharma v. OneWest Bank, FSB*,
    No. DKC-11-834, 2011 WL 5167762 (D. Md. Oct. 28, 2011) ........................46

*Skrzecz v. Gibson Island Corp.*,
    No. CIV.A. RDB-13-1796, 2015 WL 370049 (D. Md. Jan. 27, 2015)..............36

*Steel Co. v. Citizens For A Better Environment*,
    523 U.S. 83 (1998)..........................................................................30

*Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*,
    834 A.2d 170 (Md. Ct. Spec. App. 2003).............................................52

*United States v. Bentson*,
    947 F.2d 1353 (9th Cir. 1991) ...........................................................50

*Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*,
   478 F. Supp. 2d 840 (D. Md. 2007) .................................................................. 54

## Statutes

28 U.S.C. § 1295 ........................................................................................... 2

28 U.S.C. § 1338 ............................................................................... 2, 24, 25

28 U.S.C. § 1367 ....................................................................................... 2, 4

35 U.S.C. § 256 ................................................................................... passim

Md. Code, Cts. & Jud. Proc. § 5-101 ...................................................... 47

# ABBREVIATIONS

'354 patent  U.S. Patent No. 7,468,354

'648 patent  U.S. Patent No. 7,767,648

Blue Br.     Opening Brief of Appellant Annastasiah Mhaka
(filed December 29, 2014)

A_____    Page in Joint Appendix

A_____ (x:yy-zz)Page in Joint Appendix citing patent at column x, lines yy-zz

## STATEMENT OF RELATED CASES

Appellants have appealed the same civil actions to the United States Court of Appeals for the Fourth Circuit, which have been docketed as *GenSpera, Inc. v. Annastasiah Mudiwa Mhaka* and *John T. Isaacs, Ph.D., Samuel R. Denmeade, M.D.* No. 14-2118 and *Annastasiah Mudiwa Mhaka v. GenSpera, Inc., John T. Isaacs, Ph.D., Samuel R. Denmeade, M.D.,* Case No. 14-2119, and consolidated as *GenSpera, Inc. v. Annastasiah Mudiwa Mhaka,* No. 14-2118 (L).  In the appeal before the United States Court of Appeals for the Fourth Circuit, Appellees filed a motion to dismiss for lack of jurisdiction on December 11, 2014.  Appellant filed an opposition to this motion on December 29, 2014.  There has been no oral argument scheduled, however, and the Fourth Circuit has yet to publish a decision.

## STATEMENT OF THE ISSUES

1. Whether the district court properly exercised declaratory judgment jurisdiction over the claims in *GenSpera, Inc. v. Mhaka*, MJG-12-772 (D. Md.) where the Appellant communicated that she intended to bring an action against Appellee under 35 U.S.C. § 256.

2. Whether the district court possessed jurisdiction under 28 U.S.C. § 1338 over the Appellee's declaratory judgment claim and over Appellant's counterclaim seeking correction of inventorship under 35 U.S.C. § 256.

3. Whether the district court possessed supplemental jurisdiction under 28 U.S.C. § 1367 over tort claims brought by the Appellant, which were pled as counterclaims in *GenSpera, Inc. v. Mhaka*, MJG-12-772 (D. Md.).

4. Whether the district court correctly ruled that Appellee GenSpera was entitled to summary judgment with respect to the Appellant's tort claims based on Appellant's admissions in the summary judgment proceedings in *GenSpera, Inc. v. Mhaka*, MJG-12-772 (D. Md.).

5. Whether the district court correctly ruled that the Appellant's tort claims against Appellee Isaacs and Appellee Denmeade were barred by Maryland's statute of limitations.

## STATEMENT OF THE CASE

On March 12, 2012, in response to threats from Appellant Annastasiah Mhaka ("Mhaka") to bring an action to "correct" the inventorship of U.S. Patent No. 7,468,354 ("the '354 patent") and U.S. Patent No. 7,767,648 ("the '648 patent") (collectively "the GenSpera Patents") pursuant to 35 U.S.C. § 256, Appellee GenSpera, Inc. ("GenSpera") initiated a declaratory judgment action in the United States District Court for the District of Maryland. (A151-158.) On April 2, 2012, Mhaka filed an answer and counterclaims in which she sought correction of the '354 patent and the '648 patent and to be added as a joint inventor. (A159-189.) On May 16, 2012, Mhaka filed an amended answer and counterclaims in which she again sought correction of the '354 patent and the '648 patent and to be added as a joint inventor (but relinquished certain affirmative defenses). (A190-218.)

The case proceeded through fact discovery and into expert discovery, and on October 24, 2012, the district court ruled that GenSpera was entitled to move for summary judgment on the grounds that, because Mhaka's alleged inventive contribution took place after the application and after the claims' priority date, the district court could not correct the patents' inventorship under 35 U.S.C. § 256 as a matter of law. (A228-229.)

That motion was pending when, one week later, Mhaka filed a separate case in the Circuit Court for Baltimore, Maryland, styled *Annastasiah Mudiwa Mhaka v. GenSpera, Inc., et al.*, Case No. 24-C-12-006407 OT.  (A233-261.)  Repeating many of the same allegations that were made in support of her inventorship counterclaim, Mhaka asserted tort claims for conversion, constructive fraud and unjust enrichment, and she added Drs. Samuel Denmeade ("Denmeade") and John Isaacs ("Isaacs") as defendants.  On November 8, 2012, GenSpera removed the state court action to federal court on the ground that the complaint's allegations and claims raise substantial questions of federal patent law.  Mhaka did not move to remand or otherwise contest federal jurisdiction.

Shortly after removing the action, GenSpera moved to dismiss Mhaka's new complaint on the grounds of preemption and claim splitting.  (A264-279.)  On January 24, 2013, the district court conducted a hearing on GenSpera's motion for summary judgment in the original action and its motion to dismiss Mhaka's tort claims.  (A553-594.)  On March 21, 2013, the Court sent a letter to both parties, asking them whether they agreed that there would be federal jurisdiction over the claims in the removed complaint if they were asserted in as counterclaims in the original case.  (A726.)  In response, the parties agreed that "the Court would have supplemental (or pendent) jurisdiction under 28 U.S.C. § 1367 over the claims asserted in MJG-12-3302 if those claims are brought as counterclaims in MJG-12-

4

772." (A730.)  Mhaka also stated that she wished to proceed with her claims in federal court.  (A731-732.)

On May 1, 2013, the district court issued a Memorandum and Order Re: Procedural Matters.  (A22-34.)  In it, the court granted GenSpera's motion for summary judgment as to Mhaka's claim under 35 U.S.C. § 256.  (A33.)  It requested that Mhaka filed an amended answer and counterclaim in the original MJG-12-772 case, pleading her tort claims as counterclaims.  (A33.)  It denied the Appellees' motion to dismiss without addressing its merits of its arguments. (A26.)

On January 2, 2014, Isaacs and Denmeade moved for summary judgment on the grounds that Mhaka's tort claims against them were barred by the applicable statute of limitations, and GenSpera joined in the motion.  (A1005-1018.)  On May 6, 2014, GenSpera moved separately for summary judgment, on the grounds that the claims against it were untenable regardless of whether they were barred under the applicable statute of limitations.  (A1233-1248.)  Mhaka opposed both motions but did not question the district court's jurisdiction.  (A1081-1121, A1368-1399.)

On August 15, 2014, the district court held a hearing on the motions, and it issued its order on September 12, 2014.  (A48-65.)  The court held that Mhaka's conversion claim failed as matter of law.  (A58.)  The court further held that Mhaka's claims for unjust enrichment and constructive fraud were untenable as

against GenSpera.  (A56-57.)  The district court then agreed that the unjust

enrichment and constructive fraud claims against Denmeade and Isaacs were time-

barred.  (A58-64.)  On these grounds, the district court granted the Appellees'

motions for summary judgment and entered judgment in their favor, and on

September 12, 2014, the district court entered judgment in the Appellees' favor.

(A66-67, A86.)

On October 10, 2014, Mhaka filed identical notices of appeal from the

district court's summary judgment rulings in this Court and the United States Court

of Appeals for the Fourth Circuit.  (A1635-1642.)  On December 11, 2014, the

Appellees moved to dismiss the appeal before the United States Court of Appeals

for the Fourth Circuit on grounds that that this Court possessed exclusive subject

matter jurisdiction over this appeal under 28 U.S.C. § 1295.  Although she has

opposed that motion, Mhaka has moved to stay the appeal before the United States

Court of Appeals for the Fourth Circuit pending this Court's ruling on appeal.

Both the motion to dismiss and motion to stay are currently pending.

# INTRODUCTION

Mhaka precipitated this litigation by threatening to bring an inventorship action under 35 U.S.C. § 256 to add herself as an inventor to the '354 patent and '648 patent. Based on Mhaka's admissions in discovery that her alleged contribution took place after the patents' disclosure had been completed, Appellee GenSpera moved for summary judgment. In opposition, Mhaka argued without success that the district court lacked jurisdiction to rule on the merits of her claim.

Simultaneously, Mhaka filed a new complaint, making the same factual allegations as before but asserting tort claims against GenSpera and her former mentors at Johns Hopkins University (Appellees Isaacs and Denmeade). At Mhaka's urging, the district court consolidated the two actions and exercised jurisdiction over her tort claims. Because the district court ultimately ruled in the Appellees' favor, Mhaka now insists that the court lacked jurisdiction all along.

Mhaka's arguments betray a stunted and incorrect conception of the district court's jurisdiction. A litigant cannot threaten litigation and then later deprive the court of declaratory judgment jurisdiction by conceding that the threatened litigation is untenable under the applicable law. Similarly, a plaintiff cannot escape judgment on the merits by insisting that its patent claim could never have succeeded and therefore, that the district court lacked federal question jurisdiction. As authority from the Supreme Court and from this Court make clear, the federal

courts have jurisdiction over meritorious *and* non-meritorious patent claims. Otherwise, non-meritorious claims could always escape judgment on the merits.

Because the district court possessed jurisdiction over the Appellant's inventorship counterclaim (and GenSpera's mirror-image declaratory judgment claim), it correctly exercised supplemental jurisdiction over the Appellant's tort claims — which she elected to re-file in the original case for the express purpose of exploiting such jurisdiction. A comparison of the allegations that form the basis of the tort claims and those that form the basis of the original inventorship claim shows that they are virtually identical.

By the time that the Appellant leveraged those allegations in support of her tort claims, however, those tort claims were indisputably time-barred. Appellant admitted in court that her tort claims had accrued — at the latest — by November of 2006. Her own correspondence showed that she had knowledge of her potential claims by 2008 at the latest. Because Mhaka waited until November of 2012 to assert the claims, the district court rightly concluded that the claims are barred under Maryland's three-year statute of limitations.

For all of these reasons, which are explained in more detail below, the district court's judgments should be affirmed.

**STATEMENT OF FACTS**

I.    **GenSpera's PSMA-Targeted Prodrug Technology And Patents**

This '354 patent and '648 patent describe (in a common specification[1]) and claim a "tissue specific prodrug" technology.[2]   This prodrug is activated by prostate specific membrane antigen ("PSMA"), a glycoprotein expressed by prostate cancer cells and other cancer cells but not by healthy cells.  (A93 1:11-15, 1:25-36, A94 4:27-28.)  The inventors took advantage of PSMA's enzymatic properties, which allow it to hydrolyze (or "cleave") certain linkages between amino acids in a peptide chain.  (A93 1:47-67, 2:16-23.)  They recognized that such peptides could be linked to a therapeutic drug, inhibiting its effect.  (A93 2:28-31, A94 4:40-42.)

The specific compound of interest was thapsigargin, a naturally occurring molecule that binds to a cell's sarco/endoplasmic reticulum ("SERCA") pump, shutting it down and triggering eventual cell death by causing calcium to accumulate in the cell.  (A93 2:33-38, A96 8:35-37.)  The inventors described how

---

[1]    The application that issued as the '648 patent is a continuation of the application that issued as the '354 patent.  Both relate back to a provisional application filed in December of 2000.  On November 30, 2001, Johns Hopkins filed a related Patent Cooperation Treaty application based on the provisional.  The written description and figures of the '354 patent and '648 patent are virtually identical to those of the November 30, 2001 PCT application.  Unless otherwise noted, citations to the specification in this brief will be to that of the '354 patent.

[2]    A prodrug is a biologically inactive compound that is metabolized in the body to produce a drug.

thapsigargin could be modified to form a derivative that possessed linkage sites for

a variety of peptides cleavable by PSMA.  (A93 2:38-45, A94 4:37-44.)  They

further described how the presence of such peptides converts the toxic compound

into an inactive prodrug.  (A94 4:44-46.)  When the inactive prodrug is introduced

into the bloodstream and comes into contact with PSMA, the peptide is cleaved

and the drug activated.  (A94 4:46-50.)

Figure 1 of the patents shows the thapsigargin derivative 8-O-

debutanoylthapsigargin (or "12ADT"), which is linked to the peptide portion of the

prodrug.  (A97 9:51-54.)  The patents disclose a number of parameters for peptide

substrates for PSMA.  For instance, they teach that "[t]he PSMA cleavage site

includes at least the dipeptide "X1X2" in which X1 is Glutamic Acid (or "Glu") or

Aspartic Acid (or "Asp") and X2 is an amino acid selected from the group

Glutamic Acid, Aspartic Acid, Glutamine (or "Gln"), or Asparagine (or "Asn").

(A94 4:63-65.)  They teach that the peptide can also be a tripeptide, tetrapeptide, or

pentapeptide with X1 similarly defined and X2 through X5 again being Glu, Asp,

Gln, or Asn.  (A94-95 4:65-5:3.)[3]

---

[3]    Mhaka insists that the "PCT filing generally describes a series of peptides
(protein sequences) of indiscriminate length, a generic recipe of amino acid
combinations that covers literally trillions of possible sequences."  (Blue Br. at 6.)
In support of this assertion, she cites a bare allegation within her Amended Answer
and Complaint.  Every enumerated example in the PCT application, however, is six
amino acids in length or less (as reflected in the patents' specification, which is

Footnote continued on next page

10

All of the claims of the '354 and '648 patents require the same chemical composition recited in claim 1 of the '354 patent—a prodrug that contains 8-O-debutanoylthapsigargin (12ADT) linked to the aspartic acid of a pentapeptide having the sequence Asp-Glu*Glu*Glu*Glu, where at least one of the bonds designated with * is a gamma carboxy linkage.[4]  (A102 20:29-33, A119 20:27-37.)  During the course of fact discovery, Mhaka admitted that she had no role in the disclosure set forth in the written description and figures of the '354 patent and '648 patent (which were first set forth in the November 30, 2001 PCT Application).  (A906-908.)  She has asserted, though, that the written description and figures of the patents do not support the issued claims, to which she claimed to have made an inventive contribution. (A764.)[5]

---

Footnote continued from previous page

based on the PCT application).  Moreover, each such example is composed of a combination of just four amino acids (Glu, Asp, Gln, or Asn).  Starting from these parameters, possible combinations number only in the hundreds, not the thousands (let alone "trillions").

[4]    On November 3, 2006, in a response to a restriction requirement, application claim 29—identical to issued claim 1 of the '354 patent—was added.  In an Office Action dated January 22, 2007, the Examiner accepted the Applicant's addition of claim 29 and deemed it allowable over prior art.

[5]    Although not material to the disposition of this appeal, Mhaka's assertion (for which she provides no support) is without merit.  She ignores the fact, for instance, that the patents' written description specifically discloses that "12ADT-Asp-Glu*Glu*Glu*Asp-Glu" is a "preferred" peptide that can be used in the invention.  (A97 9:64.)  The written description further discloses that glutamic acid (or "Glu") may be conservatively substituted for aspartic acid (or "Asp").  (A95:50-59.)  This conservative substitution would result in 12ADT-Asp-Glu*Glu*Glu-Glu, one of

Footnote continued on next page

Drs. Isaacs and Denmeade helped to found GenSpera during the pendency of the original application. In exchange for the company's agreement to take on the costs of prosecuting the application, Isaacs and Denmeade entered into a letter of intent to grant GenSpera an exclusive license to any resulting patents. (A154 ¶ 18.) In April of 2011, Isaacs and Denmeade granted GenSpera an exclusive worldwide license to the '354 Patent and the '648 Patent. (A154 ¶ 20.)

## II.    Mhaka's Work As A Student In The Inventors' Lab

In 2000, Mhaka was a predoctoral graduate student at JHU doing rotations among various faculty members' laboratories. After first working for another member of Dr. Isaacs' laboratory on a different project, Mhaka began to work under Dr. Denmeade's supervision on the PSMA-targeted prodrug project.[6] Mhaka was tasked with synthesizing peptides and testing them according to the protocols set forth in the November 30, 2001 PCT Application. These protocols

---

Footnote continued from previous page

the species claimed in the '354 and '648 patents. Mhaka's attacks on the disclosure of the original provisional are equally unsupported and without merit. Because, however, the provisional was not part of the record on which the district court issued its rulings, those attacks are irrelevant for purposes of this appeal.

[6]    In her opening brief, Mhaka states that "Drs. Denmeade and Isaacs asked Dr. Mhaka, then a molecular biology doctoral candidate at JHU, to take their early and general work and see if she could develop a compound and delivery method that would work." (Blue Br. at 6.) There is absolutely no support in the record for the remarkable assertion that the two professors sought the insights of a pre-doctoral student to "develop a compound and delivery method that would work."

included testing the peptides for PSMA hydrolysis and for stability in blood. (A99-100 13:1-51, 14:25-16:45.)[7]

During the course of fact discovery, Mhaka admitted that she was told to synthesize the first peptides that she made and tested. (A755-756.) She claimed, however, that she conceived of the design for the peptide Asp-Glu*Glu*Glu*Glu (or "AMM9").[8] (A758.) In her opening brief, Mhaka represents without citation that she "wrote up her findings and presented them to her thesis advisor and immediate mentor, Dr. Denmeade, in early 2004." (Blue Br. at 7.) In her deposition, Mhaka testified that she sketched the compound's design on an unwitnessed page her laboratory notebook and then showed it to Dr. Denmeade. (A1536 at 264:5-25.)[9]

---

[7]    The specification describes a series of PSMA hydrolysis and stability studies using the drug Methotrexate as a model. (A99 14:15–100 16:45.) These studies, in which Mhaka did not participate, are reproduced (without credit) as the second chapter in her dissertation thesis.

[8]    In Mhaka's opening brief she represents that "[s]he called the compound "AMM9," after her initials." (Blue Br. at 6.) As reflected in Mhaka's pleadings, she used the standard convention of referencing compounds she had synthesized by her initials whether or not she was directed to make the compound in question. (A755-756.)

[9] Dr. Denmeade disputed this assertion in his deposition, testifying that he directed Mhaka to synthesize AMM9 in the latter half of 2003. (A635, A1269 at 55:16-21.) The laboratory notebooks that presumably might have reflected Mhaka's work went missing after Mhaka removed her personal effects from the lab. (A1270 at 133:9-135:19, A1355-1356.)

### III.    Mhaka's Investigation Into The Patents And Her Alleged Claims

Mhaka admitted to having read both the provisional application and the PCT application in the 2002-2003 period.  (A1045-1048, A1055.)  In June of 2004, Dr. Mhaka informed Dr. Denmeade that she thought she should be included as an inventor on the pending PSMA-targeted prodrug patent.  (A1052-1055.)  In response, Dr. Denmeade informed her that he did not believe she could be included as an inventor, "since all of the current work is really covered in the pending PSMA patent."  (A1066-1067.)  Mhaka has testified that, having read the patent application, she disagreed.  (A1052-1057.)[10]

In 2005, Mhaka joined the venture capital firm Acidophil LLC as a consultant and later a project manager.  (A1033-1034.)  One of her responsibilities there was to conduct intellectual property research, and in connection with this task she conducted searches of patent databases.  (A1035-1036; A1071-1072.)  Mhaka

---

[10] Mhaka also claims, as she did before the district court, that Dr. Phillip Cole testified that, "based on his personal involvement, [he believed] that Mhaka had made an inventive contribution and should be included as an inventor."  (Blue Br. at 12.)  She fails to mention, however, that Dr. Cole testified that his understanding of the '354 patent and '648 patent was "had been formed without ever reading them."  (A984 at 34:1-5.)  Having never read the claims of the patents, Dr. Cole admitted that he could not say whether Mhaka (or anyone else) made an inventive contribution to them.  (A984 at 36:9-21.)  Mhaka also attributed to Dr. Cole a recollection of a conversation in which Dr. Denmeade supposedly admitted to having deliberately "left Dr. Mhaka off the application."  (Blue Br. at 10.)  In actuality, when asked whether he could testify under oath to his recollection of such a conversation, Dr. Cole responded, "Absolutely not."  (A983.)

also drafted multiple patent applications, both for herself and for others. (A1037-1044.) In June of 2008, she conducted an internet search to determine the status of Drs. Denmeade's and Isaacs' pending PSMA-targeted prodrug patent application. (A1058-1060, A1062.) After identifying the application, she complained to her employer at Acidophil that "[t]he patent still excludes me and still reads pending." (A1066.) Two weeks later, after having done additional research, she wrote that "AMM9 [the compound she claimed to have designed] is the lead prodrug candidate for GenSpera." (A1075.) In the same email, she wrote, "[i]f AMM9 was added to the first patent, I feel I should be included as co-inventor." (*Id.*)[11]

In August of 2008, Mhaka contacted JHU to determine whether the university could address her concerns. (A1080.) In response, the Technology Transfer office confirmed that the patent application had been assigned to Drs. Denmeade and Isaacs and then licensed to GenSpera. (A1079-1080.) The university officials then recommended that Mhaka engage a lawyer. (A1063, A1078-1079.) Writing to her employer on October 15, 2008, Mhaka agreed: "I think I should go ahead and get counsel." (A1078.)

---

[11]    In her Federal Circuit Brief, Mhaka contends that "Dr. Denmeade finally disclosed the presence of some but not all of GenSpera's activities to Dr. Mhaka in June 2011." (Blue Br. at 10.) Her own correspondence shows that Mhaka was fully aware of GenSpera and its development of G202/AMM9 three years earlier. (A1075.)

15

## IV.    Mhaka's Threats To Bring A Section 256 Inventorship Action

Mhaka waited over three years to act on this advice.  In her opening brief, Mhaka suggests that she was the *target* of litigation: "On March 12, 2012, GenSpera sued Dr. Mhaka[.]"  (Blue Br. at 10.)  The facts show that Mhaka herself precipitated the controversy.  On January 6, 2012, Mhaka's counsel sent GenSpera a letter, stating that Mhaka believed that she "contributed, in a significant, material, and inventive way" to the patents and "'was improperly omitted as a named inventor."  (A283.)  In subsequent communications, GenSpera asked Mhaka to identify support for such contentions including evidence in laboratory notebooks that would corroborate them.  On March 9, 2012, Mhaka's counsel responded that she "[did] not have access to the lab books, absent subpoena."  (A284.)  He then made clear that if GenSpera insisted on support for Mhaka's assertions, "we will file to correct inventorship and then issue third party subpoenas as soon thereafter as the discovery schedule [would] permit."  (A284.)

## V.    The Litigation

### A.    GenSpera's Declaratory Judgment Action And Mhaka's Inventorship Counterclaim

In response to Mhaka's ultimatum, GenSpera filed a complaint seeking a declaratory judgment.  (A151.)  In her answers, Mhaka did not deny the existence of an actual controversy for purposes of the court's declaratory judgment jurisdiction.  Nor did she deny that the court lacked subject matter jurisdiction over

the dispute. (A160 ¶ 9, A164 ¶ 29.) Instead, as she had threatened, she brought

suit under 35 U.S.C. § 256 to be named an inventor on the '354 and '648 patents.

(A216 ¶ 81, A217 ¶ 86.) In so doing, she affirmatively pled that the district court

"[had] subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C.

§§ 1331, 1338(a), 2201, and 2202." (A200 ¶ 13.)

Her counterclaims did not identify, however, when her supposed inventive

contribution to the patents supposedly took place.[12] GenSpera thus asked Mhaka

to "[i]dentify the conception date of [her] alleged contribution to each claim of

U.S. Patent Nos. 7,468,354 and 7,767,648" and all evidence in support of her

contention. (A396-397.) After initially refusing to provide any date (or even a

range of dates) for her alleged contribution, Mhaka finally answered GenSpera's

interrogatory on September 4, 2012. (A398.) In her supplemental responses, she

stated that "her conception of AMM9 / G-202 is currently believed to have

occurred in mid-late 2003." (A398.)

---

[12]    Mhaka's pleading merely gives a six-year window in time: "Dr. Mhaka joined
the Johns Hopkins School of Medicine Cellular and Molecular Medicine
Department in 1999 as a doctoral candidate, and continued through to graduation
in 2005." (A208 ¶ 44.)

**B.    GenSpera's Motion For Summary Judgment And Mhaka's State Court Complaint**

Based on this admission, GenSpera moved for summary judgment.[13]

(A320.)  In support of its motion, GenSpera pointed to authority explaining that, "to have a valid patent, all work of each joint inventor towards the conception of the claimed invention must have been done before the filing date of the patent application."  Robert A. Matthews, 4 ANNOTATED PATENT DIGEST § 26:116 (2012).  The same authority made clear that "any party claiming to be an alleged omitted inventor who can only show alleged contributions to the conception based on acts done after the filing date of the patent application, as a matter of law, cannot be a joint inventor to what was disclosed in the application."  *Id*.  GenSpera noted at least two court decisions supporting its position.  *See Britesmile, Inc. v. Discus Dental, Inc.*, No. C 02-03220 JSW, 2005 WL 1083194, at *2-4 (N.D. Cal.

---

[13]    Mhaka claims that "GenSpera *changed its position* and requested leave to file a Summary Judgment Motion."  (Blue Br. at 12 (emphasis added).)  This assertion, which Mhaka repeated numerous times before the trial court, fundamentally misunderstands and mischaracterizes GenSpera's "position."  Throughout this litigation, GenSpera consistently maintained that Mhaka's claims were baseless for a number of reasons, including: (1) that, because Mhaka's alleged inventive contribution took place after the application and after the claims' priority date, the district court could not correct the patents' inventorship under 35 U.S.C. § 256 to add her as inventor; (2) that regardless of this fatal flaw, the patents' specification demonstrates to one of skill that the named inventors were in possession of the inventions of claims 1 of the '354 patent and the '648 patent; and (3) that (again, regardless of the fatal timing flaw) Mhaka could not meet her burden to prove that she conceived of AMM9, G-202, or any other compound that would fall within the genus set forth in claims 1 of the '354 patent or the '648 patent.

May 9, 2005) (holding that, where allegedly omitted inventor claimed to have contributed supposed "new matter" in claims after the application was filed, the plaintiff's inventorship action failed as a matter of law); *Oregon Health & Sci. Univ. v. Vertex Pharms., Inc.*, 233 F. Supp. 2d 1282, 1283-85 (D. Or. 2002) (concluding that allegedly omitted inventor who made his supposed contribution one year after patent application could not maintain correction of inventorship action because such an action would effectively invalidate the patent).

Mhaka opposed GenSpera's request for leave to bring the motion, insisting that "[l]eave should be denied as the motion would be futile." (A399.) Even as the motion was pending, Mhaka's counsel wrote to GenSpera demanding that "that [the company] drop its suit and file a petition to correct inventorship." (A399.) In the context of these communications, Mhaka's counsel confirmed that she was "*not questioning jurisdiction*." (A400.)

On October 31, 2012, one week after the Court granted GenSpera leave to move for summary judgment, Mhaka filed a separate case in the Circuit Court for Baltimore City, Maryland, styled *Annastasiah Mudiwa Mhaka v. GenSpera, Inc., et al.*, Case No. SCV-25-1081. In her complaint, she acknowledged for the first time that "[a]dding Dr. Mhaka to the Patents would necessitate their invalidity because they would necessarily run afoul of 35 U.S.C. § 112[,]" something prohibited because "35 U.S.C. § 256 cannot be used to correct the inventorship of a

19

patent where to do so would necessitate the patent's invalidity."  (A253 ¶¶ 85-86.)
In the place of her inventorship claim, and based on the same factual allegations,
she asserted claims for conversion, constructive fraud, and unjust enrichment,
adding her two former mentors as defendants.  (A257-260.)

On November 20, 2012, GenSpera filed its motion for summary judgment.
On the same day, Mhaka filed her "Non-Opposition" and Cross-Motion for
Summary Judgment.  (A366.)  In it, she again conceded that her inventorship claim
failed as a matter of law, and she signaled that she did not oppose GenSpera's
motion for summary judgment:  "On this record, GenSpera is correct: Courts will
not correct inventorship to add an omitted inventor if the act of correction
necessarily invalidates the patent.  For this reason, Defendant Mhaka does not
oppose GenSpera's motion for summary judgment on the § 256 counterclaim."
(A402.)  For the first time, however, she argued that the district court lacked
jurisdiction to rule on her inventorship claim, precisely because it was untenable.
(A371-372.)

### C.    The Summary Judgment Hearing And Subsequent Ruling

On January 24, 2013, the district court held a hearing on GenSpera's motion
for summary judgment and its motion to dismiss Mhaka's tort complaint (which
had been removed to federal court soon after its filing).  (A553.)  GenSpera
reiterated its position that it was entitled to judgment in its favor with regard to

20

Mhaka's section 256 inventorship claim. (A566.) Addressing Mhaka's counsel, the district court asked, "how there is any debate about that?" (A566.) Without argument, Mhaka's counsel conceded that "we assume that the Court will grant them the relief that they seek which is that she cannot be added under [a] 256 claim." (A579.)

Turning to Mhaka's tort claims, the district court questioned how there could be any cause of action against the company. (A1364.)[14] In addition, pointing out "very definite[]" statute of limitations issues, the district court warned that the claims raised "a severe summary judgment question." (A1027.) The district court noted, however, that those were questions for another day[15] and discussed with the parties how the claims should be handled procedurally. When the district court asked whether there were any objections to its jurisdiction over the claims, Mhaka's counsel responded, "[w]e are not contending that this Court lacks some amount of jurisdiction, I am not moving to remand." (A570.)

On May 1, 2013, the district court issued its Memorandum and Order re: Procedural Matters. (A35.) As it had pledged to do, it granted GenSpera's motion

---

[14]    As the Court remarked, "I don't understand the theory of a claim against the corporation. Maybe that is just – is a mystery." (A1364.)

[15]    On November 16, 2012, Appellees moved to dismiss Mhaka's tort claims under Rule 12(b)(6) as barred by Rule 13(a) and the doctrine prohibiting claim-splitting and as preempted by federal patent law. (A264.) The district court never addressed the preemption argument.

for summary judgment with respect to the section 256 inventorship claim.  (A46.)

It also consolidated the tort complaint and the original action.  (A46.)

### D.    The Defendants' Motions For Summary Judgment On The Tort Claims

The tort claims proceeded through a period of limited fact discovery.  On January 2, 2014, Drs. Isaacs and Denmeade moved for summary judgment on the grounds that Mhaka's claims were barred by the applicable statute of limitations (GenSpera joined in the motion).  (A1008.)  On May 6, 2014, GenSpera moved separately for summary judgment, on the grounds that the claims against it were untenable regardless of whether they were barred under the applicable statute of limitations.  (A1233.)  Although Mhaka opposed both motions  (A1081, A1368), she never asserted that the district court lacked subject matter jurisdiction to decide them.

On August 15, 2014, the district court held a hearing on the motions.  In its subsequent order, the court ruled that Mhaka's conversion claim failed as matter of law because "conversion" in Maryland does not extend to the supposed "conversion" of an intangible idea.  (A58.)  The court further noted that Mhaka had no equitable claim of constructive fraud or unjust enrichment against GenSpera. (A56-57.)  The district court then took up Drs. Isaacs' and Denmeade's motion for summary judgment on statute of limitations issues.  (A58-64.)  The district court pointed out that the latest possible date of accrual (November 2006) was

undisputed.  (A59 n.10, A60.)  Dismissing as "specious" Mhaka's argument that she did not discover her claim until 2012, the Court concluded that "indisputable evidence establishes, beyond question, that Mhaka was on 'inquiry notice' of the alleged wrongdoing by no later than 2008."  (A61.)  The court likewise rejected Mhaka's argument that the doctrine of equitable tolling should apply to suspend the running of the statute of limitations.  (A63-64).  On these grounds, the court granted the Appellants' motions for summary judgment and entered judgment in their favor.

## SUMMARY OF ARGUMENT

Mhaka raises a number of arguments on appeal. First, she argues that the district court lacked declaratory judgment jurisdiction over Appellee GenSpera's original declaratory judgment claim because Mhaka herself later agreed that she could not assert a meritorious claim to correct inventorship of the '354 patent and '648 patent under 35 U.S.C. § 256. In a related argument, Mhaka asserts that the district court lacked subject matter jurisdiction over her section 256 claim because it was untenable. Both arguments are without merit. Just as a litigant need not threaten a meritorious action to create a controversy over which a district court possesses declaratory judgment jurisdiction, a litigant need not assert a meritorious patent claim for the district court to possess jurisdiction under 28 U.S.C. § 1338.

Because the district court rightly concluded that it possessed jurisdiction over the original inventorship declaratory judgment claim and inventorship counterclaim, it was also correct on concluding that it possessed supplemental jurisdiction over Mhaka's tort claims, which were based on the same allegations that underwrote her inventorship counterclaim. Indeed, Mhaka not only agreed on this point, she affirmatively requested that the district court exercise supplemental jurisdiction over tort claims. Moreover, even if the district court had not consolidated Mhaka's tort complaint into the original inventorship case in order to exercise supplemental jurisdiction over the tort claims (as Mhaka herself

requested), the district court possessed independent jurisdiction over those claims under 28 U.S.C. § 1338.  As the district court correctly concluded, Mhaka's tort claims – which turn on the same allegations of inventorship and conduct before the Patent Office as her section 256 claim – meet the test set forth in *Gunn v. Minton,* 133 S.Ct.1059 (2013) for determining whether a state law claim arises under federal patent law.

Mhaka also argues that, even if the district court did possess jurisdiction over the tort claims, the district court was wrong in entering summary judgment in the Appellees' favor.  In so doing, Mhaka fails to mention that she herself acknowledged during the summary judgment proceedings that none of her tort claims was tenable against GenSpera.  She also fails to mention that she agreed during the same proceedings that her tort claims accrued, at the latest, by November of 2006.  Maryland law requires only that a plaintiff be on inquiry notice of the supposed wrong that gives rise to his or her claims for the statute of limitations to run.  Mhaka's own documents demonstrated that she was not only on inquiry notice in the 2006-2008 timeframe, she was making actual inquiries with respect to her alleged grievance.  Because she waited over three years to bring her tort claims, they are time-barred.

## ARGUMENT

## I.    The District Court Rightly Exercised Declaratory Judgment Jurisdiction And Subject Matter Jurisdiction Over The Claims

Having acquiesced to the district court's exercise of jurisdiction over her various claims over two years, Mhaka challenges its jurisdiction on appeal.[16]  (Blue Br. at 3.)  She does so on two general grounds: (1) she argues that there was no declaratory judgment jurisdiction over GenSpera's original declaratory judgment complaint; and (2) she argues that the district court, in any case, lacked subject matter jurisdiction over the inventorship claim and over her tort claims.  (Blue Br. at 27.)  Each of these arguments is without merit, as explained below.

### A.    The District Court Possessed Declaratory Judgment Jurisdiction Based On The Controversy Demonstrated In The Pleadings

Mhaka's opening brief demonstrates a fundamental misunderstanding as to the nature of declaratory judgment jurisdiction.  As the Supreme Court made clear in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), a court's declaratory judgment jurisdiction turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

---

[16]    While GenSpera recognizes that subject matter jurisdiction cannot be waived, the conflict between Mhaka's statements to the district court and her statements on appeal certainly raises questions about her credibility on appeal.

of a declaratory judgment."  Here, "the facts alleged" confirmed the controversy

between the parties.

- GenSpera filed a declaratory judgment complaint alleging that "Mhaka has

   created in GenSpera a reasonable apprehension that she will institute an

   action under 35 U.S.C. § 256 in attempt to 'correct' the inventorship in the

   '354 patent and the '648 patent".  (A156 ¶ 29.)  Mhaka admitted this

   allegation.  (A195 ¶ 29.)

- GenSpera further alleged that "[b]ased on these factual allegations, this

   Court possesses declaratory judgment jurisdiction over this matter pursuant

   to 28 U.S.C. § 2201."  (A156 ¶ 32.)

- Mhaka admitted this allegation also.  (A195 ¶ 32.)

Mhaka appears to take the position on appeal that, despite her admissions,

there was no real controversy after all because "GenSpera had no reasonable basis

to fear a claim that it knew could not be brought[.]"  (Blue Br. at 27.)  In other

words, because her inventorship claim turned out to be meritless, she claims that

there was no real "controversy" over which the court could assume jurisdiction.

This Court's precedent makes clear, however, that a litigant who threatens to bring

a claim creates a "controversy" for purposes of declaratory judgment jurisdiction,

regardless of whether the claim has merit:  "While a declaratory plaintiff indeed

has the burden of 'demonstrating [that] an actual case or controversy exists,' that

burden does not extend to showing that the defendant holds meritorious positions on the issues in controversy." *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1380 (Fed. Cir. 2011) (*citing King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010) (alteration in original)).

Mhaka also appears to take the position that she subsequently deprived the district court of declaratory judgment jurisdiction (and escaped any adverse judgment) by admitting that the inventorship she had threatened was untenable: "GenSpera subsequently then admitted that such a § 256 action could not lie, a concession with which Dr. Mhaka agreed. At this point, there was no justiciable controversy. . . ." (Blue Br. at 2.) For this proposition, Mhaka relies on several authorities discussing the "mootness doctrine," none of which supports Mhaka's position.

In particular, the cases cited by Mhaka addressed situations in which one party made a binding commitment not to bring suit and/or actually dismissed its own claims from court. In *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 725 (2013), for example, Nike voluntarily dismissed its trademark infringement claims with prejudice and issued a broad covenant not to sue that removed both the present and future threat of litigation. Similarly, in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007), the plaintiff alleging patent infringement moved to dismiss its own claims. In both cases, the declaratory judgment claims

were counterclaims brought in response to affirmative infringement claims, and when the plaintiffs alleging infringement dismissed their claims, there was no longer a case or controversy between the parties. *See Already*, 133 S. Ct. at 725; *Benitec*, 495 F.3d at 1343. Finally, in the third case cited by Mhaka, the declaratory judgment defendant had stated on its website prior to the suit that its policy was not to sue inadvertent infringers (which the declaratory judgment plaintiffs alleged themselves to be) and expressly disclaimed in court any intention to do so in the future.[17] *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1356–58 (Fed. Cir. 2013).

Unlike the declaratory judgment defendants in these cases, Mhaka made no binding promise not to sue, nor did she move to dismiss her own claims. Instead, even though she acknowledged that her claims must fail as a matter of law, she moved for summary judgment *in her favor*. (A366.) At all points in the litigation, there existed a case or controversy between the parties as to the inventorship of the patents. Mhaka's admission that she had to lose as a matter of law did not divest the court of jurisdiction. *See Arris Grp.*, 639 F.3d at 1380 (citing *King Pharm., Inc. v. Eon Labs, Inc*., 616 F.3d 1267, 1282 (Fed. Cir. 2010).

---

[17] Even apart from this point, *Organic Seed Growers* is inapplicable because, unlike in *Already* and *Benitec*, there was never any threat of litigation whatsoever by the declaratory judgment defendant, let alone an actual infringement suit. 718 F.3d at 1355. Accordingly, there was no case or controversy and therefore no declaratory judgment jurisdiction from the outset. *Id.*

**B.** **The District Court Possessed Subject Matter Jurisdiction Over Mhaka's Inventorship Claim And Her Tort Claims**

    **1.** **Mhaka's Failure To Assert A Meritorious Inventorship Claim Did Not Deprive The District Court Of Federal Question Jurisdiction**

In a rhetorically similar but formally distinct argument, Mhaka argues that the district court lacked *subject matter jurisdiction* over her inventorship claim because, based on undisputed facts, the inventorship claim failed as a matter of law. (Blue Br. at 20.)[18] This argument reflects a confusion between a failure to state a claim under section 256 and the district court's subject matter jurisdiction over a deficient claim. *See Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (warning against tendency "[to] conflate the distinction between subject matter jurisdiction and the essential elements of a claim for relief"); *see also Alden v. Allied Adult & Child Clinic, L.L.C.*, 171 F. Supp.2d 647, 649 (E.D. La. 2001) ("whether the Court lacks subject matter jurisdiction and whether Plaintiff has failed to state a claim on which relief can be granted are distinct questions").

The Supreme Court emphasized the distinction in *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83 (1998): "It is firmly established in our cases that

---

[18] Strangely, Mhaka ascribes this argument to GenSpera: "GenSpera filed suit in Federal Court, alleging it was the proper jurisdiction. In its Summary Judgment Motion, it then changed its mind, and effectively argued that there was no federal jurisdiction at all." (Blue Br. at 20.)

the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* at 89.  As this Court explained in *Engage Learning*, when a claimant fails to state a federal claim the presiding court does not lose its subject matter jurisdiction.  *Engage Learning*, 660 F.3d at 1353 ("To conclude in such a case that the petitioner loses because the forum is 'without jurisdiction' is to obscure the nature of the defect.").  Similarly, even when a claimant lacks statutory standing to assert a federal claim like one for correction for inventorship, the federal court nonetheless possesses subject matter jurisdiction over the claim itself.  *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011) ("Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted. . . ."); *see also Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562-63 & n.2 (Fed. Cir. 2013) (plaintiff's failure to allege damage to business or property as part of RICO claim created flaw requiring dismissal for lack of statutory standing not subject matter jurisdiction).

As the Supreme Court made clear in *Bell v. Hood*, 327 U.S. 678, 682 (1946), when a claimant asserts a deficient federal claim, the ruling against it operates as a judgment "***on the merits***":  "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually recover.  For it is well settled that the failure to state a proper cause

31

of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Accord Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 (5th Cir. 1989). Were it otherwise (as courts have pointed out), the deficiency in the claim could never be subject to a ruling on the merits. *Moore v. Lafayette Life Ins. Co*., 458 F.3d 416, 444 (6th Cir. 2006) ("If federal jurisdiction turned on the success of a plaintiff's federal cause of action, no such case could ever be dismissed on the merits."). In reaching the merits of a deficient claim, even if the claim is deficient as pled, a court *must* exercise subject jurisdiction over it. *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir.1991) (holding court must assume jurisdiction over a case before deciding legal issues on the merits); C*unningham v. Lenape Reg'l High Dist. Bd. of Educ*., 492 F. Supp. 2d 439, 446 (D.N.J. 2007) ("a court cannot dismiss a claim under 12(b)(6) without first assuming subject matter jurisdiction").

An inventorship claim under 35 U.S.C. § 256 claim is no different. The district court in *Britesmile* dismissed the plaintiff's deficient inventorship claim "with prejudice," not for lack of subject matter jurisdiction. *Britesmile*, 2005 WL 1083194, at *4 ("[T]o name Dr. Nathoo as an inventor on the patents at issue would necessarily require the Court to make a finding that the patents are invalid. Thus, Dr. Nathoo may not bring claims to correct the inventorship of the patents at issue pursuant to Section 256. Accordingly, the Court dismisses Dr. Nathoo's first

through seventh counterclaims with prejudice.").[19]  Similarly, the district court's

ruling that Mhaka's inventorship claim failed as a matter of law operated as a

judgment on the merits, not a determination of a lack of subject matter

jurisdiction.[20]

### 2.    The District Court Rightly Exercised Supplemental Jurisdiction Over Mhaka's Tort Claims – *At Mhaka's Invitation*

Mhaka now claims that "[t]he Court below *never* had jurisdiction over the

state court claims."  (Blue Br. at 39.)  She claims, moreover, that, "[t]hroughout

this process, Dr. Mhaka contested federal jurisdiction and argued that the state

claims should remain in state court."  (Blue Br. at 20.)  This representation is false.

Not only did Mhaka fail to contest the district court's jurisdiction over her tort

claims, she entreated the district court to assume such jurisdiction and to keep the

claims in federal court.

In a letter to the parties sent after the January 24, 2013 hearing, the district

court asked whether Dr. Mhaka wished to have her state tort claims heard in

---

[19]  Dismissal is proper under Rule 12(b)(1) only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous."  *Kehr*, 926 F.2d at 1409 (citing *Bell*, 327 U.S. at 682)).

[20]  "Mastering the distinction between a dismissal for lack of jurisdiction and a dismissal on the merits 'is not merely an intellectual exercise without practical utility.'  First, a dismissal on the merits usually carries res judicata effect whereas a dismissal for lack of jurisdiction typically does not."  *Engage Learning*, *Inc*., 660 F.3d at 1355 (citation omitted).

federal court.  (A728.)[21]  In a joint submission, Mhaka answered, "Yes. Dr. Mhaka

wishes to proceed with her claims in federal court."  (A735.)  As a consequence,

"she respectfully request[-ed] that she be allowed to assert the claims pled in MJG-

12-3302 as counterclaims in MJG-12-772 before entering judgment on

Defendants' motion for summary judgment in MJG-12-772."  (A735.)  The district

court also asked the parties whether they agreed that it would possess supplemental

jurisdiction over Mhaka's tort claims if they were presented in the original action.[22]

In their joint response, the parties stated, "[t]he parties agree that this Court may

properly exercise supplemental (or pendent) jurisdiction over the claims asserted in

MJG-12-3302 under 28 U.S.C. § 1367 if those claims are brought as counterclaims

in MJG-12-772."  (A736.)  The district court itself realized, however, that "the

parties' agreement cannot create jurisdiction."  (A38-39.)  It thus conducted its

own analysis and concluded that it could exercise supplemental jurisdiction over

the tort claims.

---

[21] "Does Dr. Mhaka wish to proceed with her claims in federal court, and by doing
so, eliminate any compulsory counterclaim issue?"  (A728.)

[22]   "Do you agree that there would be federal jurisdiction in MJG-12-772 over a
counterclaim and Third-Party Complaint presenting the claims in MJG-12-3302?"
(A728.)

**a.    The District Court Possessed And Retained Original Jurisdiction Even After Its Summary Judgment Ruling On The Section 256 Claims**

The district court was correct.  As Mhaka notes, supplemental jurisdiction exists if:  "(1) original jurisdiction exists for some claims, and, (2) the related claims arise from the same 'case or controversy' as the claims conferring jurisdiction."  (Blue Br. at 36.)  For the reasons explained above, *see supra* Part I.B.1, the Court possessed subject matter jurisdiction over Mhaka's section 256 inventorship claim (and GenSpera's mirror-image declaratory judgment claim), despite its conclusion that the claim lacked merit.

Mhaka asserts that "the court erred in effectively conferring jurisdiction upon itself by holding the granted Summary Judgment Order and not dismissing the case. "  (Blue Br. at 28.)  As described above, Mhaka not only failed to object to this procedure but invited the district court to adopt it.  Because Mhaka's objection on appeal is one as to procedure, it is waived by her failing to raise it before the district court.  *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *Boggs v. West*, 188 F.3d 1335, 1337–38 (Fed. Cir. 1999) ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below.").

Even if her objection were not waived, Mhaka has failed to supply any authority in support of the assertion that the district court acted outside of its authority in deferring entry of judgment in BSC's favor with respect to the inventorship claims. In fact, courts routinely grant summary judgment on certain claims and defenses while waiting for the conclusion of the litigation as a whole to enter judgment. *See, e.g.*, *Skrzecz v. Gibson Island Corp.*, No. CIV.A. RDB-13-1796, 2015 WL 370049, at *1 n.4 (D. Md. Jan. 27, 2015) (granting summary judgment on certain counts but noting that "the case shall proceed to trial on the remaining Count"); *Puryear v. Capital One Bank, N.A.*, No. CIV.A. RDB-12-3222, 2014 WL 103506, at *6 (D. Md. Jan. 10, 2014) (granting plaintiff's motion for partial summary judgment of liability on a federal claim while denying defendant's motion for partial summary judgment on a state claim); *Rotorex Co. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 571 (D. Md. 1999) (recognizing that courts can grant summary judgment even on "particular issues"); *cf.* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

The question is whether the operable pleading contains a cause of action that arises under the patent laws. *See Jang v. Boston Scientific*, 767 F.3d 1334, 1338 (Fed. Cir. 2014) (jurisdiction is based on the facts and allegations that existed at the time the claim was filed). If so, the court possesses supplemental jurisdiction

over pendent state law claims and continues to do so despite the disposition of the federal patent claim(s). *See Krauser v. Biohorizons, Inc.*, 753 F.3d 1263, 1268-69 (Fed. Cir. 2014) (explaining that federal jurisdiction would exist over all claims when complaint asserted inventorship claims, thus establishing jurisdiction over the entire action under 35 U.S.C. § 1338(a)).[23]  Here, the operable pleadings all contained claims under 35 U.S.C. § 256 over which the district court possessed original jurisdication.

> ### b.     Mhaka's Tort Claims Arose Out Of The Same Transaction, And Depended On The Same Allegations, As Her Inventorship Claim

According to Mhaka, even if the district court did possess original jurisdiction over the inventorship claims, it erred in exercising supplemental jurisdiction over her state claims because "the state claims do not arise out of the same case or controversy."  (Blue Br. at 36.)  This argument fails for at least two reasons.

First, it contradicts her prior representations to the district court.  Mhaka (with GenSpera) asked that the district court consolidate the original inventorship case with her tort complaint precisely because "extensive discovery has already been taken *on facts that are common* to both the claims of MJG-12-772 and those

---

[23] In *Krauser*, the plaintiff subsequently dismissed his inventorship claims and filed an amended complaint omitting them.  *Krauser*, 753 F.3d at 1266.

of MJG-12- 3302."  (A736.) (emphasis added)  Citing these overlapping facts and

evidence, *both* parties contended that "judicial economy, convenience, and fairness

to the parties would be well-served if this Court would allow Dr. Mhaka to assert

the claims pled in MJG-12-3302 as counterclaims in MJG-12-772 and to exercise

supplemental jurisdiction over those claims under 28 U.S.C. § 1367."  (A736.)

Second, Mhaka's pleadings themselves prove that her inventorship claim

and her tort claims arise out of the same controversy.  Just as she alleged

originally,[24] Mhaka alleged in her tort complaint that she made "significant and

novel inventive contributions to the inventions claimed in [the '354 patent and the

'648 patent."  (A234 ¶ 1.)  The "critical component" that she allegedly conceived

is precisely the same in both pleadings.  In both pleadings, she claims to be a "joint

inventor of the invention" and to be aggrieved because "she was left off the patents

as a named inventor."  (A248 ¶ 66, A249 ¶¶ 70, 71.)

---

[24]    In fact, at least 66 paragraphs in the state court complaint are virtually identical
to correlative paragraphs in Mhaka's pleadings in the original federal case.
*Compare* Mhaka's First Amended Counterclaims Against GenSpera (A197-218)
¶¶ 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28,
29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 49, 50, 51,
52, 53, 54, 55, 57, 58, 59, 60, 61, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, and 76 *with*
Mhaka's State Court Complaint (A233-261) ¶¶ 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 16, 17,
18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39,
40, 41, 42, 43, 44, 45, 47, 48, 49, 52, 53, 54, 55, 56, 57, 58, 59, 71, 72, 80, 82, 61,
62, 63, 64, 66, 67, 68, 69, 70, 96, and 103.

### c.    The District Court Correctly Determined That It Possessed Independent Jurisdiction Over Mhaka's Tort Claims

Largely because of these overlaps with the inventorship pleadings, the district court rightly determined that it possessed independent jurisdiction over Mhaka's tort claims under 28 U.S.C. § 1338.  (A39.)  Applying the test set forth in *Gunn v. Minton*, 133 S. Ct. 1059 (2013), the district court looked to (1) whether a federal patent law issue was necessarily raised by Mhaka's tort claims; (2) whether the issue was actually disputed; (3) whether it was "substantial"; and (4) whether it was capable of resolution in federal court without disruption of the federal state-law balance approved by Congress.  (A40 (citing *Gunn*, 133 S. Ct. at 1065).)

In her opening brief, Mhaka asserts for the first time that her state law claims implicate different, non-federal issues (namely, the application and interpretation of JHU's intellectual property policy).  An examination of Mhaka's pleadings refutes this assertion.  Its allegations center on:  (1) the assertion that Mhaka made an "inventive contribution" that should have been included in a patent; and (2) that the inventors misrepresented their own work to the USPTO when they "submitted an amended claim covering a subgenus of compounds comprising 12ADT (ADT being an analog of the molecule called Thapsigargin) linked to the aspartate residue of a peptide having the sequence Asp-Glu*Glu*Glu*Glu where at least one of the bonds designated with a "*" is a gamma linkage" and their assertion to the

Patent Office that "[n]o new matter has been added."  (A234 ¶ 1, A247 ¶ 59, A26 ¶ 19.)

With respect to the first category of patent law allegations, the Second Amended Answer and Counterclaims alleges that:

- "Dr. Mhaka made significant and novel contributions to the inventions claimed in [the '354 patent] and [the '648 patent"] (A745);

- "Without Dr. Mhaka's significant inventive contributions the benefits of using AMM9, or a highly similar peptide/12Adt conjugate…would not have been claimed" (A759);

- "Dr. Mhaka was the first to conceive of a compound covered by '354's Claim 1" (A760);

- "Dr. Mhaka was the first to reduce-to-practice a compound covered by '354's Claim 1" (A760);

- "Dr. Mhaka is a joint inventor of the invention claimed in '354's Claim 2 [sic], as the claim's novelty lies in the prodrug used in the pharmaceutical composition" (A760);

- "[T]he novelty of all the '648 claim rests with the prodrug used in the treatment method; a prodrug composition derived from Dr. Mhaka's contributions" (A761);

- "Dr. Mhaka is a joint inventor of the inventions claimed in the '648 Patent" (A761); and

- "Dr. Mhaka is a joint inventor of the inventions claimed in both the '354 and '648 patents." (A766.)

The district court thus concluded that "the resolution of a federal patent question—whether Mhaka made an inventive contribution to the patents at issue—is necessarily raised and actually disputed as to some, if not all, of her claims." (A41 (citing Compl. ¶¶ 75, 78, 83, 106, 122).)

With respect to the second category of patent law allegations, Mhaka asserts that the inventors "deceived the U.S. Patent and Trademark Office, and resulted in injury to the public trust." (A259 ¶ 118.) As the district court recognized, "Mhaka thereby suggests, but does not specifically plead, that Isaacs and Denmeade participated in inequitable conduct before the U.S. Patent and Trademark Office." (A42 n.2.)[25] As the district court rightly found, "Mhaka does not set forth any alternative, non-patent theories on which she might be entitled to relief; that is, she does not explain what intellectual property, other than her inventive contribution to

---

[25]    Appellees' motion to dismiss, A264-278, asserted that Mhaka's tort claims are preempted by federal patent law. (*See* A274-277.) Specifically, that state tort actions and allegations of misconduct before the U.S. PTO are governed by federal patent law and therefore preempted. (*See* A275-276.)

the claimed compound, Isaacs and Denmeade purportedly misappropriated or improperly incorporated into the applications for the Patents." (A41.)

The district court also rightly found that the patent issues raised by Mhaka's tort complaint were of "substantial" significance. The district court pointed out that in *Gunn* the tort claims asserted did not threaten the validity of an issued patent: "In *Gunn*, it was critical that the validity of the patent in issue would not be resolved by a state court's decision." (A43.) In contrast, the district court reasoned that Mhaka's tort claims—if successful—could very well threaten the validity or enforceability of the GenSpera patents. In this sense, the implications for the patents was "neither 'hypothetical' nor 'backward-looking.'" (A44.)

The district court's analysis finds support in this Court's post-*Gunn* jurisdictional jurisprudence. In *Jang v. Boston Scientific*, for instance, this Court analyzed state law contract claims that turned (at least in part) on whether a certain product infringed patents assigned under the contract. 767 F.3d at 1335-36. Contrasting the plaintiff's claims to the "backward-looking" and only hypothetically patent-oriented claims in *Gunn*, the Jang court emphasized that the plaintiff's claims raised the specter of "conflicting rulings particularly as to validity." *Id*. at 1337-38. Unlike the sort of malpractice claims at issue in *Gunn*, such state law claims that involve determinations that might threaten the validity of issued and unexpired patents are precisely the sort of claim that may be said to

42

continue to raise a substantial issue of federal patent law, even after *Gunn*. *Compare Forrester Environ. Servs. v. Wheelabrator Tech., Inc.*, 715 F.3d 1329, 1333-34 (Fed. Cir. 2013) (contrasting "malpractice claims [that portended] no forward-looking consequences and created no real possibility of inconsistent judgments between state and federal courts" with cases that "turned on issues of validity and enforceability"), *with Neurorepair v. Nath Law Group*, No. 2013-1073, 2015 WL 178302, at *5 (Fed. Cir. Jan. 15, 2015) (concluding that there was no federal patent jurisdiction over state law malpractice claims that involved, at best, a "determination of validity of claims that ultimately did not issue" and that, as a result, "would not affect the scope of any live patent").[26]

Finally, the district court also rightly determined that the federal patent law issues raised by Mhaka's tort claims were capable of resolution in federal court without disruption of the federal state-law balance approved by Congress. Mhaka's own statements support the district court's conclusion. In the parties' joint submission to the district court, she acknowledged that her tort claims "present[ed] questions that bear on federal law, and thus would benefit from the

---

[26] In *Forrester*, because the plaintiff's claims involved "conduct taking place entirely in Taiwan" and concerned patents that "have all now expired," no substantial issue of federal patent law was determined to exist. 715 F.3d at 1334-35. Similarly, in *Krauser* (in which this Court also found that no federal patent jurisdiction existed), the patent had issue "had expired in June 1998 for failure to pay maintenance fees." 753 F.3d at 1266.

Court's familiarity with such issues." (A736.) She further attested that the district court's assumption of jurisdiction over her claims "would allow the advantages of the federal forum" and would be consistent with the congressionally approved "distribution of work between the federal and state systems." (A736 n.6.)[27]

Mhaka sought to have her tort claims heard in federal court. It was only after their unfavorable disposition that Mhaka raised an objection to the court's jurisdiction.

## II. The District Court Rightly Granted Summary Judgment With Respect To Mhaka's Tort Claims

The District Court was absolutely right to grant summary judgment in the Appellees' favor with respect to Mhaka's tort claims. Indeed, at the summary judgment hearing, Mhaka: (1) expressly relinquished all of her claims against GenSpera; (2) conceded that she had no conversion claim at all against any of the Counterclaim Defendants; and (3) acknowledged that "unjust enrichment" was an equitable remedy and not a distinct claim. Thus, the only issue disputed at summary judgment was whether her constructive fraud claim against Drs. Isaacs

---

[27]   In contrast, the patent issues tangentially raised by the malpractice claims at issue in *Gunn* and *Neurorepair* did not "outweigh the especially great' interests of the state in regulating [a] state's lawyers. *Neurorepair*, 2015 WL 178302, at *6 (quoting *Gunn*, 133 S. Ct. at 1068). Here, there was no such "especially great" state interest jeopardized by the district court's exercise of jurisdiction.

and Denmeade was barred by the three-year statute of limitations.  For the reasons set forth below, the district court rightly determined that it was.

### A.    Mhaka Admitted That She Had No Claim For "Conversion" Or Any Claims At All Against GenSpera

Mhaka ignores entirely the distinct deficiencies that led to summary judgment in GenSpera's favor on her tort claims.  At the summary judgment hearing, the district court pointed out there was no viable conversion claim against *any* of the defendants: "I gather would mean that we're not arguing about a conversion theory – that's a legal claim – and also, which I thought was pretty clear anyhow, that you didn't have an ownership interest in any patent, then therefore there was nothing to convert, and that doesn't mean she has no claim for all the other things[.]"  (A1587.)  Asked whether he agreed, Mhaka's counsel stated, "I agree, Your Honor."  (A1587.)

In its summary judgment order, the district court explained this point in more detail:

> Claims for conversion of intangible property are limited to the type of intangible property rights that are merged or incorporated into a transferable document.  Maryland courts have not extended the tort to cover completely intangible rights.  There must be tangible documents that evidence the property interests, and the documents must have been transferred improperly.  The only tangible property involved in the instant case that, even arguably, might be the subject of a conversion claim against Isaacs and Denmeade, would be the Patent documents resulting from the Application. However, Mhaka does not claim an ownership interest in the Patents. Rather, she contends that Isaacs and Denmeade took her intangible property – her invention – and incorporated it into the Application resulting in the

Patents in question being issued to them. Mhaka, therefore, does not present a viable conversion claim.

(A57-58.) The district court's analysis was correct. *See, e.g.*, *Sharma v. OneWest Bank, FSB*, No. DKC-11-834, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011) ("Maryland has decided not to safeguard via the tort of conversion the sorts of purely intangible rights asserted by Plaintiffs."); *LTVN Holdings, LLC v. Odeh*, Civil No. 09-789, 2010 WL 2612690, at *6 (D. Md. 2010) ("[T]he unlawful retention of intellectual property rights is the domain of copyright law.").

The court further pointed out that "constructive fraud" was an equitable claim and "unjust enrichment" an equitable remedy, and again Mhaka's counsel agreed. (A1593.)[28] The district court also questioned how either theory was tenable against GenSpera, at least according to Mhaka's only articulated theory of damages (a "constructive trust" upon shares in GenSpera received by Drs. Isaacs and Denmeade): "GenSpera doesn't own those shares. GenSpera has no interest in those shares. They're shares in GenSpera. They don't own it. How can there be any recovery against GenSpera on any theory when what you want is something that Denmeade and Isaacs own, and they don't?" (A1579.) Pressed on this point,

---

[28] "[Court:] Is there any difference between the unjust enrichment or constructive fraud claims? Certainly not as to remedy. It's the same remedy, and it's almost as if the constructive fraud is at least part of the wrong that warrants the unjust enrichment, right? [Mhaka's Counsel:] I agree, Your Honor." (A1593.)

Mhaka admitted in open court that she had no such claim against GenSpera: "I think that's right, Your Honor."  (A1579.)[29]

The Court recounted this admission in its summary judgment order:  "As clarified at the motion hearing, Mhaka does not assert any claim against GenSpera."  (A56.)  On these bases, which Mhaka fails even to mention in her opening brief, the Court granted summary judgment in GenSpera's favor.  (A57.)  Because Mhaka does not even address the District Court's rulings on these issues, they should be affirmed.

### B.    The District Court's Determination That Mhaka's Constructive Fraud Claim Against Drs. Isaacs And Denmeade Is Time-Barred Should Be Affirmed

Thus, the only issue actually disputed at summary judgment was whether Mhaka's constructive fraud claim against the inventors was barred by the applicable three-year statute of limitations.[30]  As explained below, the District Court was correct in concluding that there was no genuine issue of material fact in

---

[29]    When Mhaka's counsel raised a "caveat" based on the suspicion that GenSpera had orchestrated control over Drs. Isaacs and Denmeade, the Court called it "an interesting theory" but reiterated that "I don't see how you could conceivably have any claim against GenSpera."  (A1579-1580.)  In response, Mhaka's counsel stated, "I agree, Your Honor."  (A1580.)

[30]    Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Code, Cts. & Jud. Proc. § 5-101.

this regard and that summary judgment should be entered in the Counterclaim

Defendants' favor.

### 1.     Mhaka's Arguments Asserting A Later Date Of Accrual Are Inconsistent With Her Admissions In Court And Are, In Any Case, Without Merit

In stating the issues for this Court to consider on appeal, Mhaka suggests

that this Court should decide "whether the District Court erred in ruling as a matter

of law that Dr. Mhaka's state tort claims had all accrued under Maryland state

law. . . ."  (Blue Br. at 3.)  Based on Mhaka's opening brief, it is unclear when

Mhaka now maintains that the claims accrued.  Attempting to resurrect "unjust

enrichment" as a distinct claim (as opposed to a theory of relief for constructive

fraud), she suggests that the claim accrued sometime "within the statute of

limitations period" without identifying any precise date of accrual.  Addressing her

tort claims generally, she insists that they did not actually accrue until "GenSpera

established that Dr. Mhaka could not be added as an inventor to the patents-in-

suit."  (Blue Br. at 14.)

These theories are not only hopelessly vague, they are wrong as a matter of

law.  In Maryland, the statute of limitations period "begins to 'accrue' on the date

of the wrong."  *Murphy v. Merzbacher*, 697 A.2d 861, 864 (Md. 1997).  Here, the

supposed wrong was the November 3, 2006 claim amendment.[31]  At the original

January 24, 2013 hearing on the Counterclaim Defendants' motion to dismiss, the

district court asked Mhaka when the Counterclaim Defendants supposedly

committed "constructive fraud."  Dr. Mhaka's counsel answered, "[i]n 2006 when

they took her AMM9 and plugged it into a pre-existing application to which she

could not be added as a co-inventor which would have cured her and given her

property rights."  (A581.)

### a.    Mhaka Agreed That Her Tort Claims Accrued No Later Than November Of 2006

The district court returned to this issue at the August 15, 2014 summary

judgment hearing.  The district court asked Mhaka's counsel to assume "perfect

knowledge" on his client's part and to identify the earliest date on which she could

have brought her claim for constructive fraud.  (A1601.)  Mhaka's counsel

answered, "I think, in 2006, Your Honor" – at the time of the claims' amendment.

(A1601-1602.)  The district court noted this admission in its summary judgment

order: "The parties agree, for purposes of summary judgment, that the wrongful act

occurred no later than November 2006, when Isaacs and Denmeade amended the

'354 Patent to claim Mhaka's AMM9 compound."  (A60.)  Because Mhaka

---

[31]    "Defendants through their incorporation of Dr. Mhaka's 2002-2003 inventive contributions (as described above, and including but not limited to the conception of AMM9) into the claimed subject matter of the Patents have permanently deprived Dr. Mhaka of her rights and/or interest in her inventions."  (A769 ¶ 106.)

admitted in Court that her constructive fraud claim accrued no later than November of 2006, she is bound by that admission and cannot escape it on appeal. *See, e.g.*, *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (collecting cases holding that a statement by an attorney in oral argument is a binding judicial admission); 30B Fed. Prac. & Proc. Evid. § 7026 (2014 ed.) (noting that an "admission[] in open court" is "[a] judicial admission [that] is binding upon the party making it; it may not be controverted at trial or on appeal of the same case").

        **b.**    **Mhaka's Argument As To A Separate Accrual Date For The '648 Patent Argument Is Consistent With This Admission And Was Never Raised Before The District Court**

On appeal, Mhaka argues for the first time that—even if her claims with respect to the '354 patent accrued in 2006—her claims with respect to the '648 patent accrued sometime later (at some date that she refuses to specify). This argument fails for two reasons. First, it is contrary to Mhaka's admission that all of her viable claims accrued no later than November of 2006. *See Bentson*, 947 F.2d at 1356. Second, Mhaka did not rely on the argument below. As a consequence, any such argument has been waived. *See Boggs*, 188 F.3d at 1337-38 ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *see also Golden Bridge Tech., Inc.*, 527 F.3d at 1322 ("Our precedent generally counsels against entertaining arguments not presented to the

district court."); *Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not 'review' that which was not presented to the district court.").

Even if Mhaka's arguments with respect to the '648 patent were not inconsistent with her admissions and had been properly preserved, they would still in wrong.  As noted above, the statute of limitations period "begins to 'accrue' on the date of the wrong."  *Murphy*, 697 A.2d at 864.  The only supposed "wrong" identified by Mhaka for purposes of her tort claims was the November 3, 2006 claim amendment during prosecution of the application that issued as the '354 patent.  *See supra* Part II.B.1.

## 2.    The District Court Correctly Rejected Mhaka's "Discovery Rule" Argument

At the summary judgment hearing, Mhaka's counsel acknowledged that there was no real dispute as to the date of her claims' accrual.  *See supra* Part II.B.1.a.  The real dispute, she insisted, was as to whether the three-statute of limitations should be tolled under the "discovery rule" or the doctrine of "equitable tolling":  "The real fight is about the discovery rule and equitable tolling, what she knew or should have known when."  (A1600.)

Maryland precedent establishes that the issue of whether the applicable statute of limitations has begun to run does not turn on a plaintiff's subjective knowledge; rather, the statute of limitations begins to run on a plaintiff's claim

51

when a cause of action has arisen and *the plaintiff* knows, *or reasonably should have known*, that the cause of action has arisen. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*, 834 A.2d 170, 178-80 (Md. Ct. Spec. App. 2003) (emphasis added) (discussing the so-called "discovery rule"); *see also Merchs. Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975) (the statute of limitations for fraud claims begins to run when the plaintiff discovers *or reasonably could have discovered* the fraud). A plaintiff need not know all the details of the cause of action. *DeGroft v. Lancaster Silo Co., Inc.*, 527 A.2d 1316, 1324 (Md. Ct. Spec. App. 1987). Nor need he or she know the amount of damages supposedly at stake. *See Supik*, 834 A.2d at 180. A plaintiff is on "inquiry notice" when he or she "has knowledge of circumstances which would cause a reasonable person . . . to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the [cause of action]." *Am. Gen. Assurance Co. v. Pappano*, 822 A.2d 1212, 1219 (Md. 2003) (internal quotations and citations omitted).

Applying this precedent to the undisputed facts of this case, the district court concluded that Mhaka's claim that she did not discover and could not have discovered her cause of action until 2012 was "specious." (A61.) As the district court recounted, "the indisputable evidence establishes, beyond question, that Mhaka was on 'inquiry notice' of the alleged wrongdoing by no later than 2008." (A61.) The district court noted Mhaka's admission that "she was conducting

52

inquiries in 2008." (A61.) It noted that, in June of that year, "she conducted an internet search to determine the status of Isaacs' and Denmeade's pending patent and discovered that she was not named as a co-inventor." (A61.) The district court went on to note that "[Mhaka] communicated with her then-employer about her concerns that the patent application excluded her as a named inventor, and she followed up with Denmeade, stating that she should be added as a co-inventor if AMM9 was claimed in the patent." Also undisputed, the district court pointed out, was the fact that in August of that year, "Mhaka contacted JHU and learned that the patent had been assigned to Isaacs and Denmeade, who in turn, had licensed it to GenSpera." Officials there "advised Mhaka in 2008 to contact a lawyer about her concerns, but she did not." (A61.)

Based on these undisputed facts, the district court correctly concluded "that no reasonable jury could find that the evidence presented by Isaacs and Denmeade failed to establish that, by no later than August 2008, Mhaka was aware of circumstances which would cause a reasonable person in her position to undertake an investigation that, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong." (A62.) This conclusion is entirely consistent with Maryland authority on the issue. *See, e.g.*, *Doe v. Archdiocese of Washington*, 689 A.2d 634, 644 (Md. Ct. Spec. App. 1997) (the plaintiff bears the responsibility of conducting a reasonable investigation, and limitations may begin

53

to run before the plaintiff knows that a cause of action has arisen); *see also Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc*., 478 F. Supp. 2d 840, 847-49 (D. Md. 2007) (holding that the plaintiff's claims for fraud and negligent misrepresentation in the sale of CT scanning machines accrued when a newspaper article questioning the safety and efficacy of the machines was published); *Hickey v. St. Martin's Press, Inc*., 978 F. Supp. 230, 235 (D. Md. 1997) (holding that the plaintiff's libel claims accrued upon book publication where the plaintiff knew of the forthcoming publication).

### 3.    The District Court Also Correctly Rejected Mhaka's "Equitable Tolling" Argument

The district court also correctly rejected Mhaka's "equitable tolling" theory. The district court noted the doctrine of equitable tolling requires evidence that the defendant engaged in some conduct after the accrual of the plaintiff's claims to prevent the plaintiff from filing suit. As the district court pointed out, "after the commencement of the three-year 'limitations' period in August 2008, there is no evidence of either action or inaction by Isaacs and Denmeade that supports the proposition that they prevented her from filing suit or lulled her into sleeping on her rights." (A64.)

On this basis, the district court was right to conclude that "equitable tolling does not apply." (A64.) Under Maryland law, for equitable tolling to apply, the claimant's pleading "plead fraud with particularity"; that is, it must complaint

"must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Douglass v. NTI-TSS*, 632 F. Supp. 2d 486, 491 (D. Md. 2009) (citation omitted). As the district court pointed out, Mhaka presented no evidence (and certainly did not plead) any facts that demonstrated that actions on the part of the Appellees' "kept her in ignorance" of her supposed claims.

Moreover, like the discovery rule, the doctrine of equitable tolling may only be invoked where "there is nothing to put the injured party on inquiry." *Frederick Road Ltd. Partnership v. Brown & Sturm*, 756 A.2d 963, 975 (Md. 2000). Here, as discussed above, the undisputed evidence demonstrated that Mhaka was on inquiry and, indeed, was making inquiries in 2008 — over three years before her claims were brought. *See also Brown v. Neuberger*, 731 F. Supp. 2d 443, 451-52 (D. Md. 2010) ("[T]he statute of limitations will not be tolled where a 'party had knowledge of facts that would be reasonable person to undertake an investigation that, with reasonable diligence, would have revealed the wrongdoing on the party of the fiduciary.'") (citation omitted). Under Maryland law, the district court rightly rejected Mhaka's "equitable tolling" argument.

# CONCLUSION

For the foregoing reasons, Appellees respectfully submit that the Court should affirm the district court order's challenged by the Appellant on appeal.


Dated: February 12, 2015                     Respectfully submitted,

                                             /s/ John E. Nilsson
                                             John E. Nilsson
                                             Seth I. Heller
                                             Arnold & Porter LLP
                                             555 Twelfth Street N.W.
                                             Washington, DC 20004
                                             Telephone: (202) 942-5000
                                             Facsimile: (202) 942-5999

                                             **Counsel for Defendants-**
                                             **Appellees GenSpera, Inc.,**
                                             **Samuel R. Denmeade, M.D.**
                                             **and John T. Isaacs, Ph.D.**

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of Appellees GenSpera, Inc., John T.

Isaacs and Samuel R. Denmeade Brief on the following counsel of record via e-

mail  through a Notice of Docket Activity generated by the Court's CM/ECF

system pursuant to Rule ECF-6(A) of the Court's Administrative Order Regarding

Electronic Service February 12, 2015:


Spencer Hosie
Darrell Atkinson
Diane Rice
Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 247-6000
Email: shosie@hosielaw.com
Email: datkinson@hosielaw.com
Email: drice@hosielaw.com

Ezra Gollogly
Philip M. Andrews
Kramon and Graham PA
One South Street, Suite 2600
Baltimore, MD 21202
Telephone: (410) 752-6030
Email: egollogly@kg-law.com
Email: pandrews@kg-law.com


/s/ John E. Nilsson
John E. Nilsson

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B). The brief contains 13,101 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure. 32(a)(7)(B)(iii).


/s/ John E. Nilsson
John E. Nilsson

*Counsel for Defendants-Appellees GenSpera, Inc., Samuel R. Denmeade, M.D. and John T. Isaacs, Ph.D.*